**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE SECURITIES, INC., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2020-SB70, Plaintiff, | Case No. 1:26-cv-09124 (LJL) |
| vs. | |
| 295 E 149 LLC, PF MOTT HAVEN LLC, ROBERT ROSENBERG, PINCUS FRIEDMAN, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, AND "JOHN DOE" NOS. 1 – 25, Defendants. | |
| The Names of the "John Doe" Defendants Being Fictitious and Unknown to Plaintiff, the Persons and Entities Intended Being Those Who Have Possessory Liens or Other Interests in, the Premises Herein Described. | |

# ORDER APPOINTING RECEIVER

THIS MATTER is before the Court on the motion of U.S. Bank National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2020-SB70 ("Plaintiff"), acting by and through its special servicer, CWCapital Asset Management LLC ("CWCAM"), for the appointment of a receiver (the "Motion"). Upon review of the Verified Complaint ("Complaint")[1],

[1] Capitalized terms that are not defined herein shall have the meaning given to them in the Complaint.

dated October 16, 2026, the Motion, and the record herein, and for good cause shown, the Court FINDS and CONCLUDES as follows:

## FINDINGS

A. Plaintiff's predecessor in interest, Hunt Mortgage Partners, LLC ("Original Lender"), loaned defendants 295 E 149 LLC and PF Mott Haven LLC (collectively, "Borrower") the original principal amount of Five Million One Hundred Ninety-Eight Thousand and 00/100 Dollars ($5,198,000.00) (the "Loan"), as evidenced by, *inter alia*, a loan agreement (the "Loan Agreement") dated September 9, 2019 between Original Lender, as lender, and Borrower, as borrower; a New York Consolidated, Amended and Restated Note dated September 9, 2019 (the "Note"); and the following Mortgage recorded as indicated:

| Mortgage Instrument | Date Recorded | Recording Office & Record Number | Borrower |
|---|---|---|---|
| Consolidation, Extension and Modification Agreement dated September 9, 2019, including assignment of leases and rents | September 18, 2019 | New York City Office of the City Register, CRFN 2019000301518 | Borrower |

as well as a Guaranty dated September 9, 2019 executed by Robert Rosenberg and Pincus Friedman, and other documents evidencing or relating to the Loan (collectively, the "Loan Documents").

B. Pursuant to allonges and assignments, Original Lender transferred and assigned all of its right, title and interest in the Note, Mortgage and Loan to Plaintiff, including the following recorded assignments:

| Assignment of Mortgage | Date Recorded | Recording Office & Record Number | Assignee |
|---|---|---|---|
| Assignment of Consolidated Instruments dated | September 18, 2019 | New York City Office of the City Register, CRFN | Federal Home Loan Mortgage |

| | | | |
|---|---|---|---|
| September 9, 2019 | | 2019000301519 | Corporation ("Freddie Mac") |
| Assignment of Mortgage dated January 14, 2020 | February 4, 2020 | New York City Office of the City Register, CRFN 2020000045458 | Plaintiff |

C. The Mortgage grants Plaintiff a lien encumbering certain real property located at 295 East 149th Street, Bronx, New York 10451, designated as Block 2331, Lot 66 in Bronx County, New York, and being more fully described in Schedule A attached hereto, together with all improvements located thereon (the "Mortgaged Property").

D. By the security agreements contained in the Mortgage, Borrower granted Plaintiff a security interest in the leases, rents and personal property described in the Loan Documents (the "Collateral"). Plaintiff has perfected its security interests and liens in and to the Mortgaged Property and the Collateral, including by a UCC-1 filed with the New York Department of State on September 23, 2019 at File No. 201909230435096, assigned by UCC-3 File No. 202011130436576 dated November 13, 2020 to Freddie Mac and by UCC-3 File No. 202003168117161 dated March 16, 2020 to Plaintiff, and by a County UCC-1 recorded December 3, 2019 at CRFN 2019000393102, assigned by UCC-3 recorded February 4, 2020 at CRFN 2020000045459.

E. Borrower consented in the Loan Documents to the appointment of a receiver upon the occurrence of an Event of Default. Borrower has been in default under the Loan Documents since failing to pay the monthly installments due on December 1, 2025 and each month thereafter, Plaintiff delivered a default letter dated March 13, 2026, and the outstanding principal balance was $4,628,541.02 as of May 1, 2026. Further, it appears Borrower has failed to maintain and operate the Mortgaged Property, jeopardizing Plaintiff's interest in it.

F. The Mortgaged Property and the rents, issues and profits derived therefrom are the primary source of repayment of the Loan. Because Borrower's license to collect rents has terminated and there is a risk of waste, loss or dissipation of rents and other collateral pending this action, the appointment of a receiver is warranted under Rule 66 of the Federal Rules of Civil Procedure and the applicable equitable factors.

G. The term "Income" means all rents, issues, profits, revenues, accounts, cash, security deposits, receivables and other proceeds derived from or attributable to the Mortgaged Property or the Collateral, whether arising before or after entry of this Order.

H. The term "Receivership Estate" shall mean the Mortgaged Property, the Collateral, and all Income and rights relating thereto, subject to existing liens and security interests.

I. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of Ohio, the named defendants are citizens of New York, and the amount in controversy exceeds $75,000. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because defendants reside in this State and the Mortgaged Property that is the subject of this action is located in Bronx County, within this District.

J. IT IS THEREFORE ORDERED AND DECREED on this 13th day of November, 2026 as follows:

## I. APPOINTMENT OF RECEIVER

OPEX CRE Management ~~[RECEIVER NAME]~~, with offices at 80 Broad Street, Newark, NJ 07102, shall be and hereby is appointed receiver (the "Receiver") of the Mortgaged Property and the Collateral. As a fiduciary of the Court, the Receiver is empowered to forthwith enter upon, receive and take complete possession of the Mortgaged Property and the rents, income and profits generated therefrom (including all security deposits), together with the Collateral (collectively, the

"Receivership Estate"), for the benefit and protection of Plaintiff. The Receiver shall post a bond in the amount of $ 120,000.00 in connection with such appointment.

## II. DUTIES OF THE RECEIVER

The Receiver shall be and is hereby authorized to do all of the following:

### 1. Receiver's General Duties

The Receiver shall take immediate and exclusive possession, custody and control of all of Borrower's rights to the Mortgaged Property and the Collateral.

The Receiver shall care for, preserve and maintain the Receivership Estate, make such repairs as are needed to keep the Mortgaged Property in good condition, incur expenses necessary for the care, preservation and maintenance of the Receivership Estate, and pay the costs of such repairs from receivership funds to the extent funds are available.

The Receiver is hereby given the powers and authority usually held by receivers and reasonably necessary to accomplish the purpose of this Receivership including, without limitation, the specific powers to do the following:

A. Maintain, protect, collect, lease, and, only upon further Court order entered on notice and in compliance with 28 U.S.C. §§ 2001 and 2004, sell or otherwise dispose of property of the Receivership Estate; provided, however, that nothing in this Order shall stay or otherwise modify any right, power or privilege of Plaintiff with respect to any foreclosure or other remedy available under the Loan Documents or applicable law;

B. Take possession of all bank and other deposit accounts of Borrower, including those in the name of Borrower's agents, servants, employees, representatives, and affiliates; open, close, transfer and change all bank and trade accounts relating to the Mortgaged Property so that all such accounts are in the name of the Receiver and at banks selected by the

Receiver, and make disbursements in payment of expenses incurred by the Receiver in accordance with this Order. Upon receipt of a copy of this Order, all depository institutions and banks shall close all accounts in Borrower's name relating to the Mortgaged Property and deliver the proceeds thereof to the Receiver, to be held as property of the Receivership Estate and subject to Plaintiff's security interests and liens under the Loan Documents. The Receiver is empowered to open new accounts using a new EIN and shall deposit monies collected in connection with the Mortgaged Property at a federally insured banking institution or savings association with offices in the State of New York;

C. Subject to Local Civil Rule 66.1 and prior Court order on notice to all parties, engage and employ attorneys, accountants, appraisers, auctioneers, managing agents, and other professionals or service providers necessary or appropriate to the orderly and efficient management of the Mortgaged Property; provided, however, Receiver is authorized to engage and employ Frontgate Management 670 Myrtle Street, Suite 575, Brooklyn, NY 11205 as property manager for the Mortgaged Property on terms and conditions reasonably acceptable to the Receiver and Plaintiff;

D. Enforce, reject, modify, or terminate leases or unexpired contracts of Borrower or any other defendant that are burdensome on the Receivership Estate, subject to applicable law and, for contracts or commitments outside the ordinary course exceeding $25,000, prior Court approval on notice;

E. Contest, protest or appeal any ad valorem tax or assessment, real estate tax, personal property tax or other tax or assessment pertaining to the Mortgaged Property. Any refund or reimbursement of taxes, whether paid by the Receiver or any defendant, shall be deemed Income. The Receiver is authorized to substitute as the party in interest in any pending action or appeal of the assessed valuation of the Mortgaged Property and prosecute such action or appeal in

the name of the Receiver or Borrower;

F. Exercise Borrower's rights under contracts relating to the operation of the Mortgaged Property to the extent necessary to preserve, protect and manage the Receivership Estate;

G. Plaintiff and the Receiver shall have no personal liability of any kind on account of any such termination of any management agreement by and between any property manager and Borrowers (any, a "Management Agreement"). A copy of the Management Agreement has been provided to the Receiver.

H. Require Borrower and any property manager, upon notice of this Order, to turn over to the Receiver all books and records, contracts, bank account information, keys, passwords, access codes, security deposits and other property relating to the Mortgaged Property within their possession, custody or control;

I. Exercise all powers of the Borrowers (i) under any contracts relating to operation of the Mortgaged Property to the extent not otherwise granted to Manager under the Management Agreement, (ii) as Owner under the Management Agreement or (iii) necessary to operate, preserve and protect the Mortgaged Property and the Collateral, subject to the limitations of this Order;

J. Make and enter into leases for a term not exceeding one year, obtain and eject tenants or other occupants as permitted by law, and set or modify rents, rates and terms of occupancy in accordance with applicable law and the Loan Documents, without prior Court approval;

K. Take possession and control of Borrower's books, records, correspondence, e-mails, websites, electronic data, access codes, policies and procedures, other personal property

encumbered by a security interest or lien in favor of Plaintiff, and collateral materials used in connection with the ownership, operation and management of the Mortgaged Property, to the extent the Receiver deems necessary;

L. Borrow from Plaintiff, other creditors of Borrower, or third parties on an unsecured basis and on such other reasonable terms as may be acceptable to the Receiver, funds to meet the capital needs of the Receivership Estate in excess of the Income from the Receivership Estate, in which case the Receiver is further authorized to issue Receiver's Certificates, according to Article III, Section 15 of this Order, to secure such indebtedness, subject to the following paragraphs;

M. Any and all funds advanced by Plaintiff to the Receiver for the above purposes and to preserve the Mortgaged Property shall: (a) be deemed made pursuant to contract; (b) be added to the amount of the indebtedness owed by Borrower to Plaintiff; (c) be deemed secured by the liens and security interests in favor of Plaintiff under the Loan Documents on the Mortgaged Property and the Collateral to the same extent and with the same priority as the other indebtedness secured thereby; and (d) accrue interest at the rate provided under the Loan Documents. All such funds advanced, including interest on advances, shall be deemed a prior lien before the repayment of all other claims against the Receivership Estate except taxes and assessments having first priority as a matter of law. Notwithstanding the foregoing, Plaintiff may but shall have no obligation to make advances to the Receiver, and the Receiver shall have no personal liability for any obligations of the Mortgaged Property, Borrower or any of Borrower's agents;

N. Collect all rents, issues, profits, income and revenues due or to become due from the operation of the Mortgaged Property, including amounts currently held in bank accounts for the Mortgaged Property;

O. All distributions, payments or transfers of any kind derived from the Mortgaged Property that would otherwise be made to Borrower shall instead be made to the Receiver. All such funds received by the Receiver shall be property of the Receivership Estate and shall remain subject to Plaintiff's security interests and liens under the Loan Documents;

P. Allow Plaintiff, its counsel, and appraisers or other independent third-party consultants engaged by Plaintiff access to the Mortgaged Property at all reasonable times to inspect the Mortgaged Property and all books and records relating thereto;

Q. The Receiver shall apply and make interim distributions of the Income from the Receivership Estate as follows (but subject to the lien rights granted to Plaintiff):

(i) To the fees and expenses of the Receiver and any professionals retained by prior Court order;

(ii) To pay real estate taxes and operating expenses of the Mortgaged Property, including reasonable management fees and reasonable reserves for working capital, in accordance with this Order and applicable law;

(iii) Then to the amounts due and owing to Plaintiff until all sums due and owing under the Loan Documents are paid in full; and

(iv) As may further be provided by the Court;

R. The Receiver shall make monthly interim distributions of excess cash from the Mortgaged Property to Plaintiff, after payment of the amounts set forth in the previous

paragraph's subparagraphs (i) and (ii) above and after maintaining reasonable reserves permitted by this Order or approved by the Court, unless otherwise agreed in writing by Plaintiff. Such funds delivered to Plaintiff shall be applied by Plaintiff as provided in the Loan Documents;

S. Plaintiff may, in its sole discretion and without further order of this Court, use and apply any funds currently in its possession, or remitted to it by the Receiver during the course of this receivership, that constitute property of the Receivership Estate, in any manner permitted by the Loan Documents, including for the payment of interest or principal or Plaintiff's authorized fees and expenses;

T. The Receiver is authorized to employ and compensate unlawful detainer attorneys or eviction services with respect to the operation of the Properties without prior Court approval;

U. Take possession and control of all of Borrower's rights under licenses, permits, or other government-issued documents necessary for the continued operation of the Mortgaged Property, to the extent permitted by applicable law. If an issuing agency requires the Receiver to apply for a new license, permit, or other document, the Receiver may take such lawful steps as are necessary to avoid disruption of operations, to the extent permitted by law.

**2. Monthly Statements**

The Receiver shall file on ECF and serve on all appearing parties monthly reports concerning the condition and operation of the Mortgaged Property within thirty (30) days after the close of each accounting period or month. These reports shall reflect the Receiver's fees and administrative expenses, including the fees and costs of any professionals previously authorized by the Court, but no compensation shall be paid except as approved by the Court on application and notice. The Receiver may use reasonable accounting methods in preparing these reports and

shall include supporting detail sufficient to permit Court review. Plaintiff's counsel is authorized to undertake the ministerial filing of these reports.

**3. Receiver's Final Report and Account; Term**

As soon as practicable, and in any event not later than 45 days after the receivership terminates, the Receiver shall file on ECF, serve on all appearing parties, and notice for hearing in this Court the Receiver's Final Report and Account. Notice must be given to all persons of whom the Receiver is aware who have potential claims against the Receivership Estate.

The motion to approve the Final Report and Accounting, and for discharge of the Receiver, shall contain a summary of the receivership accounting including an enumeration, by major categories, of total revenues and total expenditures, the net amount of any surplus or deficit with supporting facts, a declaration under penalty of perjury of the basis for the termination of the receivership, and evidence to support an order for the distribution of any surplus, or payment of any deficit, in the Receivership Estate.

This receivership shall continue until further order of the Court; provided, however, that the receivership shall terminate upon delivery of a judicial deed following a foreclosure sale, Plaintiff's acceptance of a deed in lieu of foreclosure, Borrower's payment of all sums due and owing to Plaintiff or further order of the Court.

The Receiver may be removed either (1) automatically 30 days after the filing of a written demand for removal signed by Plaintiff's counsel and filed with the Clerk of this Court; (2) automatically 30 days after a notice of resignation is signed by the Receiver and filed with the Clerk of this Court; or (3) in the Court's equitable discretion upon a motion for cause. If the Receiver is removed, a successor receiver may be appointed by stipulated order of Plaintiff and

Borrower. If Plaintiff and Borrower cannot agree on a successor receiver, either party may request that the Court appoint a successor receiver by further order upon motion.

Immediately upon termination of the receivership, the Receiver shall turn over the Receivership Estate to Plaintiff or as otherwise ordered by the Court; provided, however, that if any portion of the Receivership Estate is sold pursuant to a further order of this Court, immediately upon such sale the Receiver shall turn over the sold property to the purchaser unless otherwise ordered by the Court. The Receiver shall retain sufficient funds to pay the Receiver's final approved bills and expenses.

**4. Management of the Mortgaged Property**

Subject to the provisions of this Order and subject to further order of this Court, the Receiver shall exercise the powers, rights and privileges of Borrower to operate and manage the Mortgaged Property. The Receiver may employ agents, independent contractors, employees and management companies as may be needed to assist the Receiver in fulfilling these responsibilities, but other than as provided in Section 1C above shall not employ any attorney, accountant, appraiser, auctioneer, managing agent or other professional without prior Court order on notice to all parties. The Receiver shall operate the Mortgaged Property in compliance with applicable law. The Receiver shall have no personal liability for the performance of duties under this Order except as otherwise provided by law or further order of this Court and shall have no obligation to advance personal funds in connection with those duties.

**5. Utilities and Insurance Continuation**

Any utility company providing services to the Mortgaged Property, including gas, electricity, water, sewer, trash collection, telephone, communications or similar services, shall be prohibited from discontinuing service to the Mortgaged Property based upon unpaid bills incurred

by Borrower. Further, such utilities shall transfer any deposits held by the utility to the exclusive control of the Receiver and be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such services. New accounts under the name of the receivership shall be established within 30 days. Utility companies are prohibited from discontinuing service while the new receivership accounts are in process of being established.

No insurance company shall be permitted to terminate coverage or refuse coverage for the Mortgaged Property based upon the appointment of the Receiver pursuant to this Order. So long as premiums are paid as required, except at the request of the Receiver, no insurance company may terminate insurance during the existing policy term and each shall provide renewal of all applicable policies at commercially reasonable terms and rates. In addition, all insurance companies shall make the required changes to named insureds, additional insureds and loss payees, as applicable, at no further cost as the Receiver may designate. Without limiting the foregoing, upon obtaining new replacement policies in amounts and on terms consistent with Plaintiff's Mortgage, the Receiver may terminate prior insurance. All refunds delivered to the Receiver on account of any insurance policies shall constitute property of the Receivership Estate and shall be subject to Plaintiff's liens and security interests under the Loan Documents. The Receiver shall add Plaintiff as mortgagee insured and loss payee under any property insurance policies obtained by the Receiver and as additional insured under any casualty insurance policies obtained by the Receiver. The Receiver shall be an additional named insured on all applicable policies in relation to the Mortgaged Property obtained or maintained by Borrower.

The Receiver shall hand-deliver, fax or email a copy of this Order to all affected utilities and insurers within ten (10) business days after the Receiver files the Receiver's oath and bond. When an event terminating the receivership occurs, the Receiver shall hand-deliver, fax or email

a written notice to all affected utilities and insurers within ten (10) business days after the termination occurs.

**6. Mail**

The Receiver may issue demands in the name of the receivership under the U.S. Postal Service to gain exclusive possession and control of such postal boxes as may have been used by Defendants for the receipt of rent, issues, profits, income or revenue of any kind and other mail, and may direct that certain mail related to the Mortgaged Property and its operation be re-directed to the Receiver.

## III. GENERAL PROVISIONS

**7. Receiver's Oath and Bond**

Before performing duties, the Receiver shall execute a Receiver's Oath. Within ~~three days~~ three business days of this appointment, the Receiver shall also post a bond from an insurer in the sum of $[120,000.00], conditioned upon the faithful performance of the Receiver's duties. The Receiver's Oath and bond shall be filed on ECF, and this Order shall become effective upon such filing unless the Court orders otherwise.

**8. Receiver's Fees**

Without further Order of the Court the Receiver shall be entitled to pay to himself from funds in his possession, professional fees earned by Receiver at the rate described in Schedule B for such time as is reasonable and necessary for the Receiver to accomplish the purposes and tasks set forth in this Order. All fees and costs of the Receiver shall be accounted for in the monthly financial report. Receiver shall also be entitled to receive reimbursement for reasonable out-of-pocket expenses incurred on behalf of the Receivership Estate, including costs for travel, mileage,

faxes, copies, photographs, printing and similar Receiver-provided benefits. Nothing herein shall obligate Plaintiff to pay such costs or expenses.

**9. Overhead Expenses**

All fees and expenses incurred by the Receiver which pertain solely to the Receiver's general office administration and/or overhead, including, but not limited to office supplies, employee wages, taxes and benefits and other charges shall not be paid by the Receivership Estate unless incurred directly and solely for the benefit of the Receivership Estate.

**10. Bank Accounts**

The Receiver shall take possession of and receive from all depositories, banks, brokerages and other institutions any money on deposit in such institutions belonging to or arising from the operation of the Receivership Estate, whether such funds are in accounts titled in the name of Borrower or otherwise, and the Receiver may indemnify the institution upon whom such demand is made and is empowered to open or close any such accounts. The Receiver shall deposit monies collected in connection with the Receivership Estate at federally insured banking institutions or savings associations that are not parties to this case. Monies coming into the possession of the Receiver and not expended for purposes authorized herein shall be held by the Receiver pending further orders of this Court.

**11. Security Deposits**

Any security deposits or other deposits which tenants or other occupants have paid to Borrower or its agents and which are not paid over to the Receiver, and over which the Receiver has no control, shall remain obligations of Borrower and shall not be required to be refunded by the Receiver absent further order of this Court. Any security deposits or other deposits received by

the Receiver shall be held and applied in accordance with applicable law and the relevant leases or occupancy agreements.

**12. Insurance Determination and Procurement**

The Receiver shall determine upon taking possession of the Mortgaged Property whether, in the Receiver's judgment, there is sufficient insurance coverage. With respect to any insurance coverage obtained thereafter, the Receiver shall be named as an additional insured on the policies for the period that the Receiver is in possession of the Mortgaged Property, without deleting any naming of Plaintiff as additional insured, mortgagee insured and/or loss payee. If sufficient insurance coverage does not exist, the Receiver shall immediately notify Plaintiff and shall have thirty (30) calendar days to procure sufficient insurance on the Mortgaged Property, excluding earthquake and flood insurance; provided, however, that if the Receiver does not have sufficient funds to do so and is unable to borrow or receive an advance of such funds, any such advance of which shall be governed by Paragraphs 1 K and L above, the Receiver shall seek instructions from the Court with regard to whether insurance shall be obtained and how it is to be paid. The Receiver shall not be responsible for claims arising from the lack of procurement or inability to obtain insurance.

**13. Police Assistance**

Receiver may request assistance of law enforcement officials when taking possession, or at any other time during the term of the Receivership, if in the opinion of Receiver, such assistance is necessary to preserve the peace and protect the Receivership assets.

**14. Legal Counsel**

Receiver may hire independent legal counsel unaffiliated with the Receiver or its property manager if needed by the Receiver, and pay such persons for their services at such rates as the

Receiver deems appropriate for the services provided out of the assets of the Receivership Estate. Such expenditures shall not exceed $5,000.00 during the term of the receivership without Plaintiff's consent.

**15. Receiver's Certificates**

In the event that Income from the operation of the Mortgaged Property is insufficient to meet normal operating expenses and costs, the Receiver is authorized to borrow money and to issue Receiver's Certificates to secure such indebtedness. The total amount of all monies borrowed and Receiver's Certificates issued shall not exceed Two Hundred Thousand Dollars ($200,000.00) if borrowed from and issued to Plaintiff or Twenty-Five Thousand Dollars ($25,000.00) if borrowed from and issued to any other person or entity, in either case without further order of this Court. The Receiver shall have no obligation to advance any funds for management or operation of the Mortgaged Property.

All such borrowings shall be subject to the provisions of Paragraphs K, L and M of Section II.1 above.

**16. Prohibited Agreements By or With Receiver**

The Receiver shall not directly or indirectly agree to, or enter into contract, arrangement, or understanding with any party, or agent, or assignee thereof, concerning the following:

A. The Receiver's role with respect to the Mortgaged Property following a foreclosure sale or termination of the case, without specific Court permission;

B. How the Receiver will administer the Receivership, or how much the Receiver will charge for services, or pay for services to appropriate and/or approved third parties hired to provide services;

C. Who the Receiver will hire, or seek approval to hire, to perform necessary services to administer the Receivership;

D. The making of expenditures for any capital improvements to the Mortgaged Property.

**17. Plaintiff to Notify Receiver of the Appearances of All Parties**

The Plaintiff is ordered to notify promptly the Receiver of the names, addresses, and telephone numbers of all parties and their counsel who appear in the action, so that the Receiver may give notice to all parties of any matters affecting the Receivership.

**18. Limits on Receiver Responsibilities**

Receiver shall have no obligation to pay pre-receivership debts, obligations or taxes of Borrower. Receiver shall have no obligation to prepare, file or pay tax returns for Borrower.

**19. Instructions from the Court**

The Receiver and the parties to this case may at any time apply to this Court for further instructions or orders and for further powers necessary to enable the Receiver to perform the Receiver's duties properly. Any such request shall be filed on ECF and served on all appearing parties. The Court may grant any relief requested by the Receiver for which Court approval is required without further hearing unless an objection is timely filed and served. In the event of an objection, the Court may schedule such hearing and notice as it deems appropriate. Nothing contained in this paragraph shall prejudice the right of the Receiver to seek expedited relief consistent with the Court's rules and applicable law.

**20. Sale of the Receivership Properties**

A. The Receiver is authorized, and the Court appoints the Receiver as Borrowers' attorney-in-fact, to sell (*pendent lite*, which the Court hereby authorizes pursuant to

FRCP 65) all or any portion of the Receivership Properties on behalf of, and in the name of Borrowers, subject to the following conditions precedent:

(i) A judicial officer has not sold the Properties at a foreclosure sale;

(ii) Receiver's selection of any real estate broker and the listing agreement shall be subject to approval of Plaintiff;

(iii) The sale, and contracts for sale, shall be subject to approval by further Order of the Court and Plaintiff's approval;

(iv) The sale shall be a cash sale to a bona fide third party purchaser for the best price obtainable (subject to assumption of the exiting Loan owing to Lender on terms and conditions acceptable to the Lender in its sole and absolute discretion);

(v) No sale shall be made to the Receiver, or to any person or entity with a beneficial interest in the Receiver, or to any person or entity in which the Receiver has a beneficial interest;

(vi) All real estate taxes shall be current at the time of the sale;

(vii) The other terms and conditions of sale shall be appropriate in the reasonable business judgment of the Receiver;

B. Subject to Section A of the Findings above, the sale of Property shall be free and clear of liens, claims, encumbrances, leasehold interests, pledges, mortgages, security interests, charges, options, and other interests (collectively, "Liens"), which Liens, if any, shall transfer, affix and attach to the proceeds of the sale with the same force, validity, priority and effect as they may have at the time of the sale, to be disbursed as provided in Paragraph H below.

C. Subject to Section A of the Findings above, the Receiver has the authority with respect to the sale of the Properties to do and perform all and every act desirable, proper or necessary with respect to the Properties including, without limitation, the authority to execute and deliver deeds of conveyance and all other documents necessary or desirable to transfer the Properties, all on behalf of and in the name of Borrowers.

D. The closing on the sale of the Property shall take place at the offices of a title company approved by the Plaintiff unless otherwise approved by the Receiver and Plaintiff. The closing statement with respect to such sale (including all closing costs, prorations, sales commissions, and any other adjustments to the purchase price) shall be subject to Plaintiff's Approval.

E. The Receiver and/or Plaintiff shall petition the Court for approval of any contract for sale of the Properties, and any resulting order of Court Approval of sale shall be a final order unless (a) a timely motion for rehearing or timely appeal as of right is filed, and (b) the order is stayed within such period upon conditions deemed appropriate by the Court.

F. Within ten (10) days after closing on the sale of any of the Properties, the Receiver shall file an affidavit with the Clerk of Court stating the following with respect to the Property which was sold:

(i) The Property was sold for the best price obtainable;

(ii) The date of the sale;

(iii) The sale complied with the conditions of this Order;

(iv) The sale price.

G. The "Net Proceeds of the Sale of the Properties" shall be the gross sales price of the Properties less customary closing costs, prorations, sales commissions and other adjustments reasonably approved by the Receiver and Plaintiff.

H. The Net Proceeds of the Sale of the Properties shall be disbursed as follows:

(i) First, to the payment of any unpaid fees of the Receiver, the out-of-pocket expenses incurred by the Receiver, and other expense of the Receivership, if any;

(ii) Second, to Plaintiff until the indebtedness secured by Plaintiff's Mortgages has been paid in full;

(iii) Third, to be held by the Receiver for the benefit of the mechanic's lien claimants, judgment lien claimants, and other claimants entitled thereto pending further order of the Court.

(iv) Fourth, to the Clerk of the Court to be held pending further order of the Court.

**21. Approval**

Whenever this Order uses the term "subject to Approval" or "Approval," the Approval shall not be deemed given except either (a) by Plaintiff's written consent either directly by the Plaintiff or by its counsel, or (b) by a specific "Order of Approval" from this Court. Receiver shall only be required to request Approval from the Court in accordance with (b) above in the event Plaintiff has not granted such Approval or a Court Order is otherwise required under this Order.

**22. General Provisions**

A. No person or entity shall file suit against the Receiver, or take other action against the Receiver, without an order of this Court permitting the suit or action provided, however,

that no prior court order is required to file a motion in this action to enforce the provisions of this Order or any other order of this Court in this action.

B. The Receiver and its employees, agents, attorneys and all professionals and management companies retained by the Receiver shall have no personal liability in connection with any liabilities, obligations, liens or amounts owed to any of Borrower's creditors because of their duties as Receiver. Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined by the Court issuing this Order.

C. The Receiver and its employees, agents and attorneys shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts and/or the failure to comply with this Court's orders. Without limiting the foregoing, Receiver shall not be liable for any debts of Borrower arising prior to the entry of this Order.

## IV. INSTRUCTIONS IN THE EVENT OF FORECLOSURE OR BANKRUPTCY

### 1. Instructions in the Event of Foreclosure or Cure

Plaintiff must notify the Receiver within 48 hours of any event of which Plaintiff has knowledge that may terminate the receivership. Upon delivery of a judicial officer's deed following a foreclosure sale, notice from Plaintiff that Borrower has paid the indebtedness due and owing or otherwise has taken such actions which Plaintiff determines cure the defaults existing under the Loan Documents, Plaintiff's acceptance of a deed in lieu of foreclosure, or further order of this Court, the Receiver shall turn over possession, custody and control of the Mortgaged Property to Plaintiff or its designee, Borrower, or the successful purchaser, as appropriate, in accordance with the Court's direction. The Receiver shall then be divested of possession, custody and control of the Mortgaged Property, and, to the extent permitted by law, shall have no further

liability as to the Mortgaged Property. Discharge of the Receiver shall require a Court order after a properly noticed motion approving the Receiver's Final Report and Account and any exoneration of the Receiver's bond.

**2. Instructions in the Event of a Bankruptcy Filing**

A. Plaintiff's Duty to Give Notice of Bankruptcy:

In the event that a bankruptcy case is filed by any defendant during the pendency of this Receivership, Plaintiff must give notice of same to this Court, to all parties, and to the Receiver, within 24 hours of Plaintiff's receipt of notice of the bankruptcy filing.

B. Receiver's Duties if Bankruptcy is Filed:

Upon receipt of notice that a bankruptcy has been filed which includes as part of the bankruptcy estate any property which is the subject of this Order, the Receiver shall do the following:

(i) Immediately turn over the Property if no relief from stay and turnover will be sought:

The Receiver shall immediately contact Plaintiff and determine whether Plaintiff intends to move in the Bankruptcy Court for an order for both: (a) relief from the automatic stay, and (b) relief from the Receiver's obligation to turn over the property (11 U.S.C. § 543).

If Plaintiff indicates no intention to make such a motion, then the Receiver shall immediately turn over the Property to the appropriate entity (either the trustee in bankruptcy, if one has been appointed or, if not, then to the debtor in possession), and otherwise comply with 11 U.S.C. § 543.

(ii) Receiver to remain in possession and preserve the Property, pending resolution of motion for relief from stay and turnover.

If Plaintiff expresses an intention to seek relief immediately from the Receiver's obligation to turn over the Property, then the Receiver is authorized to remain in possession and preserve the Property pending the outcome of those motions (11 U.S.C. § 543(a)). The Receiver may continue to collect rents, issues, income, revenues and profits and may make only those disbursements necessary to preserve and protect the Property. The Receiver shall not execute any new leases or other long-term contracts absent further order of the Bankruptcy Court or this Court. The Receiver shall do nothing that would effect a material change in the circumstances of the Property.

(iii)Receiver is to turn over Property if no motion for relief from stay and turnover is filed in the Bankruptcy Court within 10 court days after notice of the bankruptcy filings.

Notwithstanding the above, if Plaintiff fails to file a motion within 10 court days after Plaintiff's receipt of notice of the bankruptcy filing, then the Receiver shall immediately turn over the Property to the appropriate entity (either the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession) and otherwise comply with 11 U.S.C. Section 543.

The Receiver may apply for leave to retain legal counsel to assist with any Bankruptcy Proceedings.

## V. INJUNCTIVE RELIEF

**It is further ORDERED**, pursuant to Fed. R. Civ. P. 65(d), that this injunctive relief binds Defendants and their officers, agents, servants, employees, attorneys, property managers, and all

other persons who are in active concert or participation with them and who receive actual notice of this Order, and such persons are enjoined as follows:

**1. Turnover of Property**

Borrower and any property manager shall relinquish and turn over possession of the Mortgaged Property, including all schematics, access codes and all information reasonably necessary to enable the Receiver to carry out this Order, to the Receiver upon the Receiver's appointment becoming effective;

**2. Cooperation Regarding Insurance**

Borrower and any property manager shall fully cooperate with the Receiver in maintaining or transferring the property and liability insurance policies relating to the Receivership Estate and in adding the Receiver, Plaintiff and such other insureds or loss payees as may be required under the Loan Documents or by law. Nothing in this Order derogates from Borrower's obligations regarding insurance protections provided to Plaintiff under the Loan Documents. Borrower and its property managers, employees and agents are prohibited from canceling or materially reducing any insurance coverage required under the Loan Agreement that is in effect with respect to the Receivership Estate.

**3. Accounting from Borrower**

Borrower and any property manager shall, no later than 30 days after the date of this Order, prepare and submit to Plaintiff and the Receiver an accounting for all rents, security deposits and other Income received from the Mortgaged Property from and after December 1, 2025.

**4. Turnover of Keys, Books and Records**

Borrower, its employees, and any property manager are ordered to cooperate with Plaintiff in the transition of possession and control of the Mortgaged Property to the Receiver on the

effective date of this Order or as soon thereafter as is reasonably feasible, and to turn over to the Receiver, with copies of documents produced to Plaintiff's counsel, all of the following pertaining to the Receivership Estate, but only to the extent such items are in their possession, custody, or control:

A. All schematics and access codes;

B. The leases, including all communication/correspondence files;

C. All security deposits, security deposit accounts and a current accounting for security deposits;

D. All bank accounts in the name of Borrower, any Defendant, any affiliate, any Defendant's agents or servants, employees, or any other entity acting on behalf of or for the benefit of any Defendant;

E. A current aged account receivable/delinquency report;

F. Documents pertaining to all pending litigation (excluding this action);

G. Documents pertaining to all pending new leases/renewals;

H. All existing service contracts and the associated contract information;

I. All pending bids for contractor work;

J. A list of all trade payables;

K. Certificates of occupancy and "as-built" plans, engineering plans and specifications for the Mortgaged Property;

L. A list of utilities and utility accounts;

M. An inventory of all equipment, furniture, vehicles and supplies;

N. Year-end 2025 operating statements and year-to-date 2026 operating statements;

O. All marketing and advertising materials used to market the Mortgaged Property, and each website relating to the Mortgaged Property;

P. All documents, books, records and computer files, all passwords needed to access Borrower's e-mail accounts, and all other records concerning the Income and operation and management of the Receivership Estate, including without limitation Borrower's state and federal taxpayer identification numbers;

Q. All insurance policies on the Mortgaged Property and their terms;

R. All tenant and vendor insurance certificates;

S. Historical operating expenses for the Mortgaged Property; and

T. Such other records pertaining to the management of the Receivership Estate as may be reasonably requested by the Receiver.

**5. Turnover of Licenses and Permits, and Taxpayer ID Number**

Borrower shall turn over to the Receiver all documents that pertain to licenses, permits, or government approvals relating to the Mortgaged Property, to the extent such items are in Borrower's possession, custody, or control.

**6. Notification of Insurance**

Borrower shall immediately advise the Receiver as to the nature and extent of insurance coverage on the Mortgaged Property. Borrower shall immediately name the Receiver as an additional insured on the insurance policies for the period that the Receiver is in possession of the Mortgaged Property, without deleting any naming of Plaintiff as additional insured, mortgagee insured and/or loss payee. Borrower and its affiliates are prohibited from canceling or materially reducing any insurance coverage required under the Loan Agreement currently in existence with respect to the Mortgaged Property; and

**7. Turnover of Monies and Security Deposits**

Borrower, its agents, employees, partners, and all other persons in concert with them are ordered to immediately turn over to the Receiver any monies, including security deposits, prepaid rent, advance payments or funds in property-management bank accounts for the Mortgaged Property, that represent rental, lease, license, occupancy or other payments with respect to the Mortgaged Property and that are received, or have been received, by Borrower.

**It is further ORDERED** that, pending further order of this Court, Borrower and its officers, agents, partners, property managers and employees, and all other persons acting in concert with them who receive actual notice of this Order, **shall not:**

**8. Commit Waste**

Commit or permit any waste on the Property or any part thereof, or suffer or commit or permit any act on the Property or any part thereof in violation of law, or remove, transfer, encumber or otherwise dispose of any of the Property or the fixtures presently on the Property or any part thereof;

**9. Collect Rents, Issues, Income, Profits or Revenues**

Demand, collect, receive, discount, or in any other way divert or use any of the rents, issues, profits, income or revenue of any kind (any, "Income") from the Property.

**10. Interfere with Receiver**

Directly or indirectly interfere in any manner with the discharge of the Receiver's duties under this Order, the Receiver's powers hereunder, or the Receiver's possession, operation or management of the Receivership Estate;

**11. Transfer or Encumber the Property**

Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security

interest in, encumber, conceal, remove, destroy or in any manner whatsoever deal in or dispose of the whole or any part of the Property, including, but not limited to, the rents, issues, income, revenues and profits, without prior Court Order; and

**12. Impair Preservation of Property or Plaintiff's Interest:**

Do any act which will, or which will tend to impair, defeat, divert, prevent or prejudice the preservation of the Property, including the Income and the Collateral, or the preservation of Plaintiff's interest in the Property, the Collateral and the Income.

**It is Further ORDERED** that, except by leave of this Court, all lessors, lessees, licensees, occupants, customers, principals, investors, suppliers, and or creditors seeking to enforce any claim, right, or interest against Defendant, be barred by this Order from using any "self-help" or doing anything whatsoever to interfere in any way with the Receiver in the conduct of the receivership estate.

## VI. NO PREJUDICE TO FORECLOSURE; FINAL ORDER.

This Order shall not prejudice Plaintiff's foreclosure of the Mortgage or the exercise of any rights under any security agreement or the Uniform Commercial Code with respect to the Collateral, or any of Plaintiff's other claims as set forth in the Complaint.

SO ORDERED.
Dated: November 13, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge

## **SCHEDULE A**

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Bronx, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of East 149th Street distant 270.25 feet easterly from the corner formed by the intersection of the easterly side of Morris Avenue with the northerly side of East 149th Street;

RUNNING THENCE easterly along the northerly side of 149th Street, 50 feet;

THENCE northerly parallel with the east side of Morris Avenue, 80 feet;

THENCE westerly parallel with the northerly side of East 149th Street, 50 feet;

THENCE southerly parallel with the east side of Morris Avenue, 80 feet to the point of BEGINNING.

Note: Address, Block & Lot shown for informational purposes only.

Designated as Block 2331, Lot 66, Bronx County and also known as 295 East 149th Street, Bronx, New York 10451.

## SCHEDULE B

## RECEIVER COMPENSATION

| | |
|---|---|
| **Receiver Services:** | Paid Monthly, the greater of 5% of Total Income and $2,000 |
| **Accounting Fee:** | N/A |
| **Disposition Oversight Fee:** | 60 Basis Points of Gross Sale Price |
| **Receivership Expenses:** | Reasonable costs incurred in connection with the receivership will be pass through to the Property |
| **Out-of-Pocket:** | Reimbursement for reasonable out-of-pocket expenses incurred during the assignment |
| **Third-Party Professionals:** | Property management, legal, engineering, contracting and other third-party services retained by Receiver will be paid by the Property, subject to applicable approvals |

No compensation shall be paid except pursuant to Court order, other than interim compensation as provided above.

Any marketing, brokerage, or sale-related compensation shall be separately presented to the Court if sale authority is later sought and granted.